UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES R. KNIGHT, <br><br> Plaintiff, <br><br> v. <br><br> HUDSON, WILLIAMS, STONE, WAYNE PEEPLES, THERESA JOHNSON, TAYLOR, GILL, BROWN, JANE DOE, JANE DOE, JOHN DOE, <br><br> Defendants. | CAUSE NO. 3:25-CV-696-PPS-AZ |

OPINION AND ORDER

Charles R. Knight, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Knight alleges he was denied three Kosher meals over the course of a thirty-hour period in May of 2025 after he was transferred to a new disciplinary cellblock. On May 8, 2025, at approximately 1:30 PM, Knight asked Sgt. Williams and Lt. Hudson to notify Aramark's supervisor of diets, Ms. Johnson, and Aramark's kitchen supervisor, Wayne

Peeples, that his Kosher dinner needed to be delivered to his new housing location in D-cellhouse. They responded that they would take care of it. Fifteen minutes later, Knight also informed Officer Brown of his Kosher diet restrictions, and she told him she would contact the kitchen staff. At approximately 4:15 PM, however, Officer Jane Doe #1 tried to deliver a regular, non-Kosher dinner tray to Knight. When Knight told her he couldn't eat it, she responded that "Lt. Hudson told her they don't have a Kosher meal for me, so I can either take a non-Kosher tray or don't eat tonight." ECF 1 at 4. Knight chose not to eat it. He handed her request slips instead, reiterating his need for the Kosher meal. At 6:00 PM. Knight told Officer John Doe that he was still waiting for his dinner. He responded that he would let Lt. Stone and Sgt. Taylor know. Knight also handed him additional request slips.

The next morning, at approximately 4:00 AM, breakfast trays were delivered to the D-cellblock range, but Knight again received a regular meal. When Knight questioned this, the "range tender" told him Sgt. Taylor had spoken with Ms. Johnson of Aramark who had stated that his Kosher breakfast was "on the way." *Id*. At 7:34 AM, Knight filed a "complaint with the ombudsman" and also let Officer Jane Doe #2 know that he hadn't received the proper breakfast. She told Knight she would relay the message to Sgt. Gill and Lt. Hudson. At 9:50 AM, Officer Jane Doe #2 tried to deliver a non-Kosher lunch tray, but Knight refused it. She came back five minutes later with the same tray and told him that "Lt. Hudson said either take the tray or don't get anything until dinner." *Id*. at 5. Later that afternoon, Officer Gilly gave him a message saying, "Lt. Hudson and Sgt. Gill both spoke to Mr. Peeples and Ms. Johnson in the kitchen, and all

2

they said is we're working on it." *Id*. Knight submitted additional requests. When dinnertime arrived, Officer Jane Doe #2 "finally" delivered his Kosher dinner tray plus a sack. *Id*.

Based on these events, Knight has sued Lt. Hudson, Sgt. Williams, Lt. Stone, Kitchen Supervisor Wayne Peeples, Kitchen Supervisor Theresa Johnson, Sgt. Taylor, Sgt. Gill, Officer Brown, Officer Jane Doe #1, Officer Jane Doe #2, and Officer John Doe for compensatory and punitive damages for violating the Eighth Amendment by subjecting him to cruel and unusual punishment "for refusing me my required Kosher meal and depriving me of a life necessity for approximately 30 hours." *Id*. at 6. He has also sued those same defendants for compensatory and punitive damages for violating the Free Exercise Clause of the First Amendment for "denying me the rights to my religious beliefs, customs, and practices and refusing me my Kosher diet on 5-8-25 and 5-9-25 with no penological reason." *Id*. at 3.

Under the Eighth Amendment, prisoners can't be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). In evaluating an Eighth Amendment claim, I must conduct both an objective and a subjective inquiry. *Id.* The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" so that "a prison official's act results in the denial of the minimal civilized measure of life's necessities." *Id.* at 834. A nutritionally adequate diet is one of life's necessities. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). However, the denial of food does not automatically amount to an Eighth Amendment violation, and instead the court "must assess the amount and duration of the deprivation." *Reed v. McBride*,

178 F.3d 849, 853 (7th Cir. 1999). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

Knight doesn't allege he was denied a nutritionally adequate diet over a period of time. Rather, he describes being denied three individual meals over the course of a little over one day.[1] While I understand this may have been unpleasant, it doesn't amount to the type of extreme deprivation that would support an Eighth Amendment claim. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (inmate who missed a few meals didn't state Eighth Amendment claim); *Morris v. Kingston*, 368 F. Appx. 686, 689 (7th Cir. 2010) (finding that missing seventeen meals over twenty-three days did not violate the Constitution because plaintiff "ha[d] not shown that missing his meals … caused serious harm or lasting detriment."); *see also Adams v. Pate*, 445 F.2d 105, 108-109 (7th Cir. 1971) (conditions that merely cause temporary inconveniences and discomfort or make confinement unpleasant don't rise to the level of constitutional violations). Knight will not be permitted to proceed under the Eighth Amendment.

---

[1] He states that he was deprived of his required Kosher meals for "approximately 30 hours from 5-8-25 thru 5-9-25." ECF 1 at 6. However, his allegations make it clear that he received his Kosher lunch on May 8th and was then denied the following dinner, breakfast, and lunch before receiving his Kosher dinner on May 9th.

With regard to the First Amendment, "[t]he Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal citation and quotation marks omitted). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379-80 (7th Cir. 2016) (citation and internal quotation marks omitted). However, "[d]e minimis burdens on the free exercise of religion are not of constitutional dimension." *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999).

As outlined above, Knight claims he missed three Kosher meals over the thirty-hour period following his transfer to a new location in the prison—namely, D-cellblock in the disciplinary housing unit. These allegations don't describe anything more than a de minimis burden on his religious practice caused by logistical issues related to a transfer. He wasn't forced to eat foods that violated his religious principles; rather, he was deprived of three single meals. He admits that the evening after his arrival on D-cellblock, his religious meals resumed as normal. Again, I don't discount that he likely experienced some short-term hunger, but he hasn't alleged a viable First Amendment claim under applicable standards.[2]

---

[2] I have also considered whether he might be eligible for relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which offers broader protections than the First Amendment. *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). RLUIPA only provides for injunctive relief against state actors. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011). Knight doesn't describe an ongoing burden on his religious practice but instead describes a one-time problem that occurred almost a year ago. As such, he hasn't asserted a claim for injunctive relief under RLUIPA.

5

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "District courts, however, have broad discretion to deny leave to amend a complaint where the amendment would be futile." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). For the reasons previously explained, such is the case here.

For these reasons, this case is DISMISSED under 28 U.S.C. § 1915A.

SO ORDERED.

ENTERED: February 17, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT